**GOLDZWIG, Plaintiff-Appellant, v. MERION, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1750. Decided April 29, 1943.

Shaman, Winer & Shulman, Dayton, for plaintiff-appellant.

Thomas J. Herbert, Attorney General, Columbus, Philip R. Becker, Special Counsel, Dayton, for defendant-appellee.

## OPINION

By GEIGER, J:

This case originated in the Court of Common Pleas of Montgomery County, and is in this Court on appeal on questions of law and fact from an order made by said Court of Common Pleas.

On the 11th day of March, 1942, the appellant filed his petition in the Common Pleas Court of Montgomery County against the Superintendent of Building and Loan Associations in charge of liquidation of The American Loan and Savings Association pursuant to §687-11 GC. Prior to that date the Superintendent had filed an application in the Court of Common Pleas of Montgomery County in case No. 89,937 for authority to pay a final dividend on principal to all of the creditors of The American Loan and Savings Association, and to demand upon the payment of said dividend, the surrender of certificates of claim held by said creditors and to issue in lieu thereof certificates evidencing the right of said creditors to receive interest on their respective claims out of the funds thereafter to be produced by the liquidation of the assets, the rate of said interest to be fixed by the Court.

On March 11, 1942, the Court granted the prayer of the applicant and instructed the Superintendent to issue such interest certificates computed at the contract rate. Thereafter the applicant, with leave of Court, filed suit seeking to enjoin the Superintendent from computing interest on said creditors' claims at the "contract rate". This "contract rate" was the rate of interest which the said Association had agreed with said creditors to pay on all deposits made by the said creditors with said Association. It is alleged by the plaintiff that he and all other persons similarly situated, are prejudiced by the order made by the Court in that said order does not conform to the law. The contract of the plaintiff with

the Association and the contract of the Association with others similarly situated, was as follows:

"The interest payable on all deposits made on this book shall be at the rate of——per cent per annum, to be computed semi-annually January 1st and July 1st in each year when not withdrawn. All deposits shall bear interest from the day of deposit and shall be withdrawable in accordance with the rules of the association. Interest shall be allowed to the date of withdrawal on the whole or any part of the deposit withdrawn."

Nathan Goldzwig opened a deposit account with the Association on January 6, 1926, and entered into a contract with said Association, by the terms of which the rate of interest established for his deposit account was fixed at 6%. On or about January 1, 1932, said interest rate was changed by mutual consent to 5% from and after January 1, 1932; that on or about July 1, 1933, the interest rate was changed to 4% from and after July 1, 1933. The original interest contract and all subsequent agreements reducing the rate, stipulated that interest on said deposit account was to be **computed and compounded semi-annually.**

Since the 28th day of September, 1933, the Association has been liquidating its business in pursuance to the provision of §687 et seq. **GC,** and in course of such liquidation, defendant has paid liquidating dividends to the extent of 90%.

It is alleged that for the period from October 31, 1933, until the date of payment, plaintiff and all other owners and holders of such certificates of claim as creditors of said Association were and are entitled to receive on said certificates, interest at the rate of 6% per annum, and the plaintiff, for himself, claims that interest should be paid by the Association at the rate of 6%, and that the order of the Court made on the 11th day of March, 1942, is prejudicial to the rights of the plaintiff and all other persons similarly situated, and contrary to §687-3 GC, providing for the payment of interest at the rate of 6%.

Plaintiff for himself and of others similarly situated, prays for an order to enjoin the Superintendent from calculating the interest on said certificates at the contract rate and issuing certificates therefor, and further prays that the court declare the rights, status and legal relation between himself and all other persons with respect to the liability of the defendant to him for the payment of interest on account of said certificates, for the period subsequent to October 31,

1933, and the date of payment; for an accounting of the amount due the plaintiff and all other persons by reason thereof and for other relief.

Following the granting of the order of March 11, 1942, plaintiff filed his petition in the instant case under the authority of §687-11 GC, to restrain the action authorized by the Common Pleas Court in the liquidation proceedings.

The Superintendent in charge of liquidation answered and after certain admissions, denies that the plaintiff or any other depositor is entitled to interest in excess of the respective contract rates and denies that the action is properly brought as a "class suit" under the provisions of §11257 GC.

The only part of the order of the Common Pleas Court sought to be restrained is that with reference to the computation of interest at the "contract rate". Following the granting of the order, the Superintendent proceeded to compute **simple** interest at the contract rate on all certificates of claim and issued certificates therefor to the depositors on the payment of the final dividend on principal without prejudice to the depositors' right to receive further interest.

On October 16, 1942, the cause came on to be heard and the Court below found on the issues against the plaintiff and for the defendant; that the rate of interest to which the plaintiff and those similarly situated are entitled is the contract rate as ordered by the Court on March 11, 1942; that the plaintiff is not entitled to an injunction and that the petition should be dismissed, and notice of appeal to this Court was given. The appeal is on questions of law and fact. There is an agreement of counsel that the evidence taken in the Court below shall be used as evidence in this Court, said evidence being exhibited in a Bill of Exceptions. Counsel for the Superintendent asserts in his brief the following position:

"There seems therefore, to be three different possible conclusions that might be reached in determining the rate of interest which the depositors are legally entitled to receive on liquidation:

First—the depositor may be entitled to interest under the terms of his contract as it existed at the time the Association went into liquidation;

Second—The depositor may be entitled to interest under the general interest statute, §8305, GC, or

Third—The depositor may be entitled to such interest as the court, acting as a court of equity, may determine that he is justly entitled to receive."

Counsel for appellant asserts that the questions involved are as follows:

"One: The construction of §687-3 known as the 'Eikenberry Act' and the construction of §§8030-4-5, being general interest statutes.

Two: Did the Court have the right to adopt the rate of interest fixed by the contract of each individual claimant without adopting the entire contract that existed between the creditor and the association, which provided that the interest was to be compounded semi-annually?

Three: Did the court have the right to adopt any rate as a 'guide' or was the court restrained by the provisions of §687-3 and §8303 of the Statutes?"

Counsel for Appellant brings to our attention the various Sections of the Statute which they claim are determinative of the matters before us.

Sec. 687-3 provides in substance—immediately upon the posting of the notice as provided by 687-1, the possession of all assets of the association shall be deemed to be transferred from such association to and assumed by the Superintendent; such posting shall of itself vest the title to all the assets in the Superintendent and shall bar any legal proceedings against such association, or its assets. The privilege of withdrawing stock deposits shall cease as of the time of the posting, **and interest on deposits shall thereupon cease to accrue at the rate specified in the contract of deposit,** but without prejudice to the rights of the depositors to receive interest with other creditors from the date of said posting out of the funds produced by the liquidation of such association before distribution thereof is made to share holders on their shares.

The sections relating to interest, §§8303 et seq. provide that the parties may stipulate for the payment of interest at any rate not exceeding 8%; in cases other than those providing for a contract rate, when money becomes due and payable on any obligation between the parties or judgments secured, the creditors shall be entitled to interest at the rate at 6% per annum and no more.

Discussing the rate of interest to be paid, counsel for plaintiff cites: **Warner, Superintendent v Building Investment Company 128 Oh St 37; Squires, Superintendent v Abbott 8 O. O. 519; In re: Sun Savings Bank Company, 4 O. O. 519. See especially: Weinreich v Permanent Building and Savings Association 26 Abs 545.**

This latter case was originally decided by the same Common Pleas Judge who decided the case at bar. The decision in this Court is by Hornbeck, Judge. The important holding is that the holders of certificates at the time of liquidation were entitled to interest on their claims from the date of posting under the provisions of §687-3, but without prejudice to the rights of depositors to receive interest with other creditors.

Counsel concludes that if the contract between the depositor and the Association was rescinded, that §8305 provides the measure of the rate of interest.

We are favored with the opinion of the trial judge who held that the contracts between the depositors and the Association were violated at the time the Association was taken over for liquidation, and since they provide for payment in acordance with certain terms which cannot now be fulfilled, it is impossible to reinstate the contracts according to their terms. He states that he used the rate of interest specified in the contracts as a guide to the rate of interest that was to be allowed to depositors.

We have difficulty in following the trial court's logic. He states that the contracts between the depositors and the association were invalidated at the time the association was taken over, and that since they provide for payment in accordance with certain terms which cannot now be fulfilled, it is impossible to reinstate the contracts according to their terms, and that he, therefore, used the rate of interest specified in the contract as a guide to the rate of interest that was intended should be allowed to depositors. It seems to us that if the terms of the original deposit were abrogated, and that they cannot now be fulfilled or reinstated, that there can be no other guide as to the rate of interest allowed than the general interest §8305 GC providing for interest at the rate of 6%.

If the trial court had the power to fix this rate of interest on the application of purely equitable principles, we would readily accede to the equity of its judgment. However, we are interpreting the meaning of a statute by which the trial court and we are controlled. It is better to have uniformity in the rate of interest, as contemplated by the statute, than to permit the equitable concepts of trial judges in various jurisdiction to determine the rate of interest that depositors may receive in situations such as presented in this case. It is possible that at the time the Eikenberry Act was enacted, it was not unusual to find preferred stocks and commercial paper carrying a rate of interest in excess of 6%. What would be the obligations of a court if the contract rate to be paid

to depositors in this case was in excess of 6%? If controlled by the general statute fixing the legal rate of interest, all depositors and creditors who receive interest are brought to a uniform, common level. It is probable that this is in accord with the intent of the Act.

If the rate to be paid depositors is to be in accord with the contract, we perceive no reason why this should not include all of the terms of the contract as to interest, which in many instances would require computation of interest with semi-annual rests and compounded. If this be done, many of the depositors represented by the plaintiff would receive more money as interest upon such computation than they will receive at the legal rate.

We readily anticipate the confusion that would arise if the rate allowed to the creditors is based upon the contract rate, for the reason that the same has been changed at various times, and there are different rates provided in the contracts with considerable spread between them.

If the Association has assets which will permit a payment of interest to the depositing creditors, then the payment must be made not by virtue of a contract that is null and void because of the insolvency of the Association as provided by §687-3, but by virtue of the general statute governing interest on a claim such as the depositors have against the Association. Sec. 8305 GC, seems to us to provide the "guide" for the payment of interest rather than the uncertain rates provided by contracts once valid between the depositors and the Association, but since rendered invalid by the provisions of the statute when the Association became insolvent.

Judgment accordingly. Cause remanded.

BARNES, P. J. and HORNBECK, J. concur.